**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **AMMAR MEKARI, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 23-5362** |
| **ACCESS RESTORATION SERVICES US, INC., ET AL.** | **SECTION: "B" (2)** |

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

On November 15, 2023, the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), (b)(3) & (b)(6) (rec. doc. 18) and the Motion to Consolidate (rec. doc. 22) came on for oral hearing before the undersigned.  After the oral hearing, the Court took the motions under advisement.  In their motion to dismiss (rec. doc. 18), Defendants seek dismissal of Plaintiffs' claims pursuant to an arbitration agreement in the contract between the parties.  Plaintiffs oppose arbitration and dismissal of their claims, which they argue sound in tort.  (Rec. doc. 21).  And in their motion to consolidate (rec. doc. 22), Plaintiffs seek to consolidate this lawsuit with another similar lawsuit pending before this Court.  Defendants oppose consolidation.  (Rec. doc. 24).

After the hearing, the Court gave the parties the opportunity to submit supplemental briefing on whether a case cited by Plaintiffs for the first time at the hearing, *Ford. v. NYLCare Health Plans of the Gulf Coast*, 141 F.3d 243 (5th Cir. 1998), provided authority for denying the motion to dismiss and allowing Plaintiff's tort claim to proceed in this forum.  The Court has received and reviewed the parties' supplemental briefing and finds that the *Ford* case does the opposite of what Plaintiffs hoped – it (along with other cases cited by Defendant) requires that the Court dismiss this matter and that Plaintiffs prosecute their tort claim in arbitration.

The question in *Ford* was whether a tort action for false advertising brought by an orthopedic surgeon could be prosecuted in federal court when the parties had previously entered into a contract that contained a mandatory arbitration provision. *Id.* at 246-47. The plaintiff contended that the arbitration clause did not contemplate or encompass a tort action for false advertising filed by him against Defendants. *Id.* He argued that the false advertising claim could stand alone and, while the presentation of the tort action to a finder-of-fact may have required some reference to the contract between the parties, the tort action was independent of the contract that contained the arbitration clause. *Id.*

The defendants in *Ford*, as do many defendants in cases such as these, argued that the plaintiff's tort claim was so inextricably interwoven with the contractual agreement requiring arbitration as to make the claim arbitrable. *Id.* at 250.

The *Ford* decision applied the substantive law of Texas (as per the contract between the parties) to determine whether the plaintiff's false advertising claim could stand alone and be litigated in federal court without reference to the contract requiring arbitration. *Id.* Such analysis is undoubtedly not apropos here. In this Court's view, the *Ford* court's ultimate decision on the merits, reached by applying Texas law, is not particularly helpful in deciding this motion. What little the *Ford* decision offers here is no more than confirmation as to what the relevant question for the Court is, to wit, do Plaintiffs' claims fall within the ambit of the parties' arbitration agreement? For the reasons set forth herein, the Court finds that it does and that, as a result, that claim should be prosecuted in the ongoing arbitration between the parties.[1]

---

[1] It is undisputed that Plaintiffs have raised their "tort" claims in that arbitration in both an affirmative defense and a counterclaim. (Rec. doc. 34 at 2).

II.          <u>**LAW AND ANALYSIS**</u>

"[A]greements to arbitrate must be enforced."[2]  The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), created a strong policy in favor of arbitration and establishes "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act."  *Perry v. Thomas*, 482 U.S. 483, 489 (1987).  The courts of appeals (including the Fifth Circuit) have consistently held that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.  *See, e.g., City of Meridian Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 528 (5th Cir. 1983) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

In addition to establishing a strong presumption in favor of arbitration, the FAA also limits the role of the federal courts in determining whether an issue is arbitrable.  *See* 9 U.S.C. § 4.  "A court's sole function is to determine whether the claim is referable to arbitration" and "[o]nce that determination is made, the court may not delve further into the dispute."  *City of Meridian*, 721 F.2d at 528.  In determining whether a party must arbitrate its claims, courts generally employ a two-step analysis.  *See Jones v. Haliburton Co.*, 583 F.3d 228, 233-34 (5th Cir. 2009).  The Court must determine (1) whether "there [is] a valid agreement to arbitrate the claims, and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id.* at 234.  If both questions are answered in the affirmative, the claims must be resolved by arbitration unless "any federal statute or policy renders the claims nonarbitrable."  *Id.*

---

[2]  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citing *Volt Inform. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)) ("[C]ourts must `rigorously enforce' arbitration agreements according to their terms, . . . and `the rules under which that arbitration will be conducted.'"); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Given the strong presumption in favor of arbitration, it is not uncommon for litigants seeking to avoid arbitration so that they can prosecute their claims in federal court to plead those claims as sounding in tort. Courts uniformly take a skeptical view of this tactic.

Parties to arbitration agreements "cannot avoid them by casting their claims in tort, rather than contract." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (citing *Moses H. Cone*, 460 U.S. at 24-25). This is particularly true when the arbitration clause is broad – which is the case here.[3] Broad arbitration clauses "are capable of expansive reach," are intended "to reach all aspects of the relationship" between the parties, and "embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067-68 (5th Cir. 1998). "[I]t is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." *Id.* The Fifth Circuit Court of Appeals has held that a dispute "relates to" a contract if the "subject matter of the litigation has some connection, has some relation, or has some reference" to the contract. *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 378-79 (5th Cir. 2006).

The Supreme Court, in *Buckeye Check Cashing, Inc. v. Cardegna*, described two types of challenges that may be made to an arbitration provision, how each is to be analyzed, and – importantly for this case – who is to undertake that analysis:

> Challenges to the validity of arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that

---

[3] The relevant provision in the subject contract reads:
> The undersigned parties agree to and consent that any controversy or claim arising out of, or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association, under the Construction Industry Arbitration Rules.
(Rec. doc. 18-3 at 2).

directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

546 U.S. 440, 449 (2006) (quotation omitted).  The Court went on to hold that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.*

With all of this in mind, the Court turns to the instant motions.

At the outset, the Court is mindful that its "sole function is to determine whether the claim is referable to arbitration." *City of Meridian*, 721 F.2d at 528.  To make that determination, the Court must assess (1) whether "there [is] a valid agreement to arbitrate the claims, and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Jones*, 583 F.3d at 234.

Here, there is a valid agreement to arbitrate – the parties don't really dispute that fact. Indeed, Defendants here initially brought their claim against Plaintiffs in arbitration proceedings that remain ongoing.  And in those proceedings, Plaintiffs in this case filed affirmative defenses and a counterclaim that mirror the "tort" claims that they attempt to articulate as such in this case.

While there is no real dispute as to the validity of the specific arbitration language in the contract, there is a serious dispute over the validity of the entire contract *vel non.*  But this is the exact distinction the Supreme Court made in *Buckeye Check Cashing*, when it held that challenges to the validity of a contract that contains an arbitration clause (as opposed to a challenge to the clause itself) "must go to the arbitrator."  546 U.S. at 449.

A review of Plaintiff's First Supplemental and Amended Complaint makes it clear that they are challenging the validity of the underlying contract between themselves and Defendants:

- "Plaintiffs' contract with Defendants is vitiated due to fraud, duress, misrepresentation, and the violations against public policy."
  (Rec. doc. 15 at ¶ 41).
- Plaintiffs' contract with Access Restoration Services U.S., Inc. ("ARS") "was entered into with Defendant, ARS, through false pretenses, misrepresentations, and fraud at the direction of MMA."
  (*Id.* at ¶ 42).
- "Plaintiffs' contract with ARS is vitiated on the grounds of consent and fraud and should be rescinded and declared an absolute nullity. . . ."
  (*Id.* at ¶ 46).
- "Plaintiffs' <u>purported</u> contract with ARS is an absolute nullity due to fraud, duress, and the violation of public order. . . ."
  (*Id.* at ¶ 61) (emphasis added).
- "Plaintiffs' contract with ARS stems from and was a by-product from Plaintiffs' representation with MMA; therefore, since Plaintiffs' contract with MMA is an absolute nullity, then Plaintiffs' contract with ARS <u>is as if it never existed</u>."
  (*Id.* at ¶ 63) (emphasis added).

It is clear to the Court that there is a valid arbitration clause present in this case and that Plaintiffs' claims that the contract containing that clause should be invalidated entirely are claims that, under Supreme Court precedent, must be considered by the arbitrator.

This is not the end of the inquiry, however, as the Court must also consider whether Plaintiffs' claims, which they argue sound in tort, fall within the scope of the arbitration agreement between the parties. *See Jones*, 583 F.3d at 234. In this vein, it bears recalling that the Fifth Circuit has held that, when it comes to the question whether a particular claim falls within the ambit of an arbitration clause such as the one at issue here, that "it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." *Pennzoil*, 139 F.3d at 1067-68. That Court has further directed that a dispute "relates to" a

contract if the "subject matter of the litigation has some connection, has some relation, or has some reference" to the contract. *Acosta*, 452 F.3d at 378-79.

Here, it is simply not possible to consider the merits of Plaintiffs' claims – tort or equitable or "other" – without substantive reference to the underlying contract between the parties.

This proposition cannot be seriously or reasonably challenged – <u>but for</u> the underlying contract between Plaintiffs and Defendants, the claims that Plaintiffs seek to prosecute here would simply not have come into being. Without that contract, Defendants (and their alleged un-sued co-conspirators) would have had no vehicle through which they could unleash their alleged scheme upon Plaintiffs.

In brief and at oral argument, Plaintiffs' counsel has admirably advocated that their clients' claims can be effectively divorced from any substantive consideration of the contract that forms the essential connection between these parties. But in these circumstances, that just isn't possible.

III.    **CONCLUSION**

"[A]rbitration should not be denied unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5' Cir. 2005). For the reasons explained above, the Court must conclude that Plaintiffs' claims in this case are arbitrable under all applicable precedent.

Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), (b)(3) & (b)(6) (rec. doc. 18) be **GRANTED**, and Plaintiffs' claims be **DISMISSED WITH PREJUDICE**. Because this Court has recommended that Plaintiffs' tort

claim is subject to arbitration, all of Plaintiffs' claims are arbitrable, and dismissal with prejudice is warranted. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (and cases cited therein).

And because there are no longer two lawsuits to consolidate, **IT IS FURTHER RECOMMENDED** that the Motion to Consolidate (rec. doc. 22) be **DISMISSED AS MOOT**.

**NOTICE OF RIGHT TO OBJECT**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _14th_ day of _____ December _____, 2023.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE
